1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT

8                 EASTERN DISTRICT OF CALIFORNIA

9

10   WILLIE LEO HARRIS,                    Case No.  1:16-cv-01572-DAD

11           Petitioner,                   DEATH PENALTY CASE

12        v.                               ORDER HOLDING FEDERAL
                                           PROCEEDINGS IN ABEYANCE DURING
13   RON DAVIS, Warden of the California State   PENDENCY OF STATE EXHAUSTION
     Prison at San Quentin,                PROCEEDINGS
14
             Respondent.
15

16

17        This matter is before the court following its December 5, 2018 order (Doc. No. 64) on

18   the stipulation of the parties that respondent show cause why petitioner should not be granted a

19   stay of these federal habeas proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005) in

20   order to allow him to exhaust in state court the unexhausted claims asserted in his mixed

21   petition filed with this court on March 30, 2018.[1]

22        Respondent, through his counsel Deputy Attorney General Amanda Cary, filed a

23   response to the order to show cause on January 30, 2019.  Petitioner, through appointed

24   counsel Saor Stetler and Richard Novak, replied to the response on February 28, 2019.

25   Respondent filed a sur-reply on March 22, 2019.

26   /////

27   /////

28
     ---
     [1]  Petitioner's unexhausted claims are claims 8; 10; 11.C.12; 11.C.14; 12; 13; 14; 27; 32;
     34.D.5; 34.D.6; 34.D.7; 34.D.9; 36; 43; and 44.

1   The court finds the matter amenable to decision without a hearing.  Upon  considering
2   the parties' filings and the record, and for the reasons explained below, the court finds good
3   cause to hold these federal habeas proceedings in abeyance.

4                              BACKGROUND AND PROCEDURAL HISTORY

5           On June 30, 1999, petitioner was convicted in Kern County Superior Court of first-
6   degree murder with special circumstances of robbery and rape,  robbery,  rape,  theft, and arson
7   in the May 20, 1997 killing of college student Alicia Manning in her Bakersfield apartment.
8   On July 6, 1999, the same jury returned a verdict of death.

9           On August 24, 1999, the trial court denied modification of the verdict, sentenced
10  petitioner to death and imposed a determinate sentence on the remaining counts and
11  enhancements.

12          On August 26, 2013, petitioner's conviction was affirmed on automatic appeal to the
13  California Supreme Court.  *People v. Harris*, 57 Cal. 4th 804 (2013).  On June 23, 2014, the
14  United States Supreme Court denied certiorari.  *Harris v. California*, 573 U.S. 936 (2014).

15          On September 21, 2016, the California Supreme Court summarily denied petitioner's
16  petition for writ of habeas corpus, denying relief as to all of his claims on the merits and, as to
17  certain claim(s), on procedural grounds.  *In re Harris*, Case No. S187337.

18          On October 18, 2016, petitioner commenced this federal habeas proceeding.  He filed
19  his habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 30, 2018, therein alleging
20  forty-five claims including subclaims.

21                                      LEGAL STANDARDS

22          A federal court will not grant a state prisoner's application for a writ of habeas corpus
23  unless "the applicant has exhausted the remedies available in the courts of the State."   28
24  U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement by fully and fairly
25  presenting to the highest state court all federal claims before presenting those claims for relief
26  to the federal court.  *Picard v. Connor*, 4040 U.S. 270, 276; *Baldwin v. Reese*, 541 U.S. 27, 29
27  (2004); *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008).
28  /////

Stay and abeyance of a federal habeas petition that includes both exhausted and unexhausted claims is appropriate in "limited circumstances" where:  (i) "the petitioner has good cause for his failure to exhaust," (ii) "his unexhausted claims are potentially meritorious," and (iii) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Rhines,* 544 U.S. at 277-78; *see also Mena v. Long*, 813 F.3d 907, 912 (9th Cir. 2016) (holding that fully unexhausted petitions may be stayed pursuant to *Rhines* where these same requirements are met).  Such a stay allows state courts the first opportunity to consider and address a state prisoner's habeas corpus claims.  *Rhines,* 544 U.S. at 273-74 (citing *Rose v. Lundy,* 455 U.S. 509, 518-19 (1982)); *King v. Ryan,* 564 F.3d 1133, 1138 (9th Cir. 2009) ("Habeas petitioners have long been required to adjudicate their claims in state court - that is, 'exhaust' them before seeking relief in federal court.").

The decision whether to grant a *Rhines* stay is subject to the discretion of the district court.  *Rhines*, 544 U.S. at 276; *see also Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005) (when the three *Rhines* factors are satisfied, however, "it likely would be an abuse of discretion for a district court to deny a stay[.]").

DISCUSSION

A.    Good Cause

The existence of "good cause" in the context of a *Rhines* stay turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify a failure to exhaust.  *Jackson*, 425 F.3d at 661-62 (The "good cause" requirement does not require a showing of "extraordinary circumstances."); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 416-17 (2005) (reasonable confusion about timeliness of a state filing ordinarily constitutes good cause); *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014) (a "legitimate reason" for the failure to exhaust satisfies the equitable "good cause" element of the *Rhines* test).

The Ninth Circuit Court of Appeals has observed that:

> The caselaw concerning what constitutes "good cause" under *Rhines* has not been developed in great detail.  *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on

what constitutes good cause to excuse a petitioner's failure to exhaust.").

\* \* \*

We do know, however, that a petitioner has been found to demonstrate "good cause" where he meets the good cause standard announced in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Blake*, 745 F.3d at 983–84. *Martinez* carved out an exception to the general rule, stated in *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), that "ignorance or inadvertence" on the part of a petitioner's post-conviction counsel does not constitute cause to excuse a procedural default of a claim. Specifically, the *Martinez* Court concluded that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320.

In *Blake*, we concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause "was not a bare allegation of state post-conviction [ineffective assistance of counsel], but a concrete and reasonable excuse, supported by evidence." *Blake*, 745 F.3d at 983. The court further observed that "good cause under *Rhines*, when based on [ineffective assistance of counsel], cannot be any more demanding than a showing of cause under *Martinez* to excuse state procedural default." *Id.* at 983–84. We emphasized, in response to the idea that ineffective assistance of post-conviction counsel could always be raised, that *Rhines's* requirement that claims not be plainly meritless and that the petitioner not engage in dilatory litigation tactics "are designed ... to ensure that the *Rhines* stay and abeyance is not . . . available in virtually every case," *id.* at 982.

*Dixon v. Baker*, 847 F.3d 714, 720-21 (9th Cir. 2017); *see also Blake*, 745 F.3d at 983-84.

Here, petitioner argues that the ineffective assistance of post-conviction counsel by that counsel's failure to investigate, develop and present his intellectual disabilities and mental impairments to the state court as claimed ineffective assistance of trial counsel (*see* unexhausted federal claim 11.C.14) and substantive incompetence to stand trial (*see* unexhausted federal claim 13), provides excuse and good cause for his failure to exhaust the unexhausted claims contained in his mixed petition. (Doc. No. 66 at 4-5; *see also* Doc. No. 37-5 at 160-64, 214-19; Doc. No. 48-2 at 16; Doc. No. 57 at 326-30); *see Blake*, 745 F.3d at 982-83; *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003)) ("[t]rial counsel has a duty to

1  investigate a defendant's mental state if there is evidence to suggest that the defendant is
2  impaired.").

3      Petitioner supports this argument by pointing to evidence in the state record that
4  notwithstanding awareness of indicia of his intellectual disabilities and mental impairments, his
5  post-conviction counsel Barry Karl failed to:   (i) retain mental health expertise to opine
6  thereon, (*see* Doc. No. 66 at 4-5; *see also* Doc. No. 48-2 at 16), and (ii) develop and present the
7  above noted unexhausted claims.   (*See* Doc. No. 66 at 4-5; *Blake*, 745 F.3d at 982-83; *Dixon*,
8  847 F.3d at 716; *see also* Doc. No. 57 at 175-80, 326-30 (citing Penal Code §§ 1367, 1368);
9  *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984) (ineffective assistance of counsel has
10 two components, deficient performance and prejudice therefrom)).[2]

11     Respondent counters that petitioner has not shown that "[his] failure to exhaust resulted
12 from any external objective factor that cannot fairly be attributed to him."   (Doc. No. 67 at 5.)
13 Respondent argues that the allegations of ineffective assistance by post-conviction counsel are
14 merely conclusory, "bald assertion[s]" unsupported by evidence.   (Doc. No. 65 at 4-5 (citing
15 Doc. No. 57 at 325, 328); *see also* Doc. No. 67 at 4-5 (citing *Blake*, 745 F.3d at 982 and
16 *Wooten*, 540 F.3d at 1024 n.2 (no good cause where ineffective assistance claim was
17 undeveloped).)[3]   Respondent observes that petitioner's post-conviction counsel has not
18 provided a supporting habeas declaration nor has petitioner explained his prior counsel's
19 failure to do so.   (*See* Doc. No. 65 at 4 (citing *Lisea v. Sherman*, No. 2:14-CV-1766 CKD P,
20 2014 WL 4418632, at *3 (E.D. Cal. Sept. 8, 2014) (denying a motion for stay and abeyance
21 because the petitioner presented no evidence in support of his contention that appellate counsel
22 was ineffective in failing to raise certain claims)).

23     The court concludes that petitioner has satisfied the applicable standard by showing
24 good cause for the granting of stay and abeyance under *Rhines*.   *See Blake,* 745 F.3d at 983-84
25 & n.7.   In this regard, petitioner need not prove ineffective assistance by his post-conviction

26
27 [2] Any reference to state law is to California law unless otherwise noted.

28 [3] Reference to pagination is to ECF system pagination for documents filed in the docket and
    otherwise to internal pagination.

1  counsel in order to be entitled to such a stay.  *See e.g., Ervine v. Warden, San Quentin State*

2  *Prison*, No. 2:15-CV-1916 TLN DB, 2018 WL 372754, at *3 (E.D. Cal. Jan. 10, 2018), *report*

3  *and recommendation adopted,* No. 2:15-CV-01916-TLN-DB, 2018 WL 1173959 (E.D. Cal.

4  Mar. 6, 2018).  Under *Blake*, petitioner need only provide a "concrete and reasonable excuse,

5  supported by evidence" that his post-conviction counsel failed to discover, investigate, and

6  present to the state courts the new claim.  745 F.3d at 983-84; *see also Martinez*, 566 U.S. at

7  14.

8        Here, petitioner has made more than make a "bare allegation" of ineffective assistance

9  by his post-conviction counsel.  *Blake*, 745 F.3d at 983.  He has provided a reasonable excuse

10  by specifically identifying post-conviction counsel's failure to independently investigate,

11  discover, develop and present then available facts supporting colorable claims based upon

12  incompetence to stand trial.

13        Post-conviction counsel Karl was aware of indicia of petitioner's incompetence.

14  Indeed, counsel alleged in the state habeas petition filed on petitioner's behalf that  "petitioner

15  suffered from depression, heard voices, and may also have been bipolar [that his] [f]ull [s]cale

16  IQ was in the 70's, [that] he may have suffered a brain injury resulting in impairment, and/or

17  [that] he may have been exposed to pre-natal alcohol consumed by his mother." (Doc. No. 37-

18  5 at 104.)  Attorney Karl relied upon such evidence when he presented in state court an

19  unsuccessful habeas execution ineligibility [Atkins] claim, in which he asserted that:

20              [Petitioner's] lifelong affliction with mental retardation and
               neuro-cognitive and medical deficits and disabilities rendered
21              him unable to understand and process information, to cooperate
               with and assist his counsel, and to understand the charges and the
22              proceedings against him with the constitutionally requisite
               capacity throughout.  Further, petitioner's deficits rendered him
23              unable to engage in logical reasoning, attend to, comprehend and
               remember events and information, and to plan and control his
24              behavior.

25  (Doc. No. 37-5 at 160); *see also Steinsvik v. Vinzant*, 640 F.2d 949, 954 (9th Cir. 1981) (citing

26  *Zapata v. Estelle*, 588 F.2d 1017, 1021-22 (5th Cir. 1979) ("Even where the evidence before

27  the trial judge was insufficient to raise a good faith doubt with respect to Steinsvik's

28  competency, he would still be entitled to relief if it now appears that he was in fact

1    incompetent."). Elsewhere in the state habeas petition he filed on petitioner's behalf, attorney

2    Karl noted petitioner's "myriad" of mental impairments including neurological, physiological

3    and psychological deficits that left him "unable to fully aid and assist in his defense[.]"  (Doc.

4    No. 37-5 at 215-16; *see also id.*, at 160-65);

5        Relatedly, penalty phase defense expert, Dr. Cecil Whiting, a clinical psychologist who

6    examined the then thirty (30) year-old petitioner prior to trial and interviewed members of his

7    family (*see* Doc. No. 35-5 at 62-95; Doc. No. 37-5 at 103) testified that petitioner suffered at

8    least "some mental impairment[,]" albeit "none that was substantial."  (*Id.*)

9        Petitioner's penalty phase counsel Gael Mueller provided a state habeas declaration

10   attesting to her review of "an evaluation of petitioner by a[n] [unidentified] qualified expert

11   who administered a full battery of standard neuropsychological tests" suggesting petitioner (i)

12   had a full-scale IQ in the 70's, (ii) suffered potential learning disabilities and memory

13   impairment with reading and spelling skills at the sixth-grade level, and (iii) demonstrated low

14   to borderline intellectual functioning.  (Doc. No. 48-2 at 16; *see also* Doc. No. 35-5 at 62-95;

15   Doc. No. 37-5 at 162-164; Doc. No. 48-3 at 93; Doc. No. 57 at 64-65, 174-75, 303, 317.)

16   Attorney Mueller also averred that during her investigation, she became aware of petitioner's

17   possible pre-natal alcohol exposure and exposure to environmental toxins, drugs and alcohol

18   during his youth; possible brain damage and bi-polar disorder; and reported jailhouse psychotic

19   and schizoaffective symptoms including paranoia and auditory hallucinations for which he

20   received anti-psychotics and anti-depressants.  (Doc. No. 48-2 at 16-19; *see also* Doc. No. 26-2

21   at 102-38; Doc. No. 53-1 at 249-54; Doc. No. 53-2 at 7-108; Doc. No. 57 at 116-17, 167.)

22       The state record reflects that attorney Karl did not retain a qualified mental health

23   expert to develop the then available mental state evidence.  (*See e.g.* Doc. No. 67 at 5 (citing

24   *Blake*, 745 F.3d at 979, 983 (good cause for failure to exhaust found where counsel was

25   ineffective by failing to present medical reports and declarations from a private investigator,

26   family and friends); Penal Code § 1376 (precluding trial of the mentally incompetent); *In re*

27   *Hawthorne*, 35 Cal. 4th 40, 47-49 (2005) (providing that post-conviction claims of execution

28   ineligibility due to mental retardation may be supported by the declaration of a qualified expert

setting forth the factual basis for a finding of significantly subaverage intellectual functioning and deficiencies in adaptive behavior)).[4]   Attorney Karl's suggestion that he lacked funds to retain mental health expertise appears to be unaccompanied by evidence of reasonable efforts undertaken to obtain state habeas funding for such investigation and discovery.  (Doc. No. 37-5 at 160-64, 214-19, 234-35; Doc. No. 37-7 at 107, 114.)

Although petitioner has not provided a habeas declaration from his post-conviction counsel in support of his showing of good cause for the granting of stay and abeyance, the absence of such a declaration is not alone a basis to discount his good cause proffer.  *See Davis v. Davis*, No. C-13-0408 EMC, 2015 WL 4512309, at *4 (N.D. Cal. July 24, 2015) (noting the absence of a requirement that ineffective assistance claims be supported by declarations from counsel); *cf., Barrera v. Muniz*, No. 2:14-CV-2260 JAM DAD P, 2015 WL 4488235, at *3 (E.D. Cal. July 23, 2015), *report and recommendation adopted*, 2015 WL 6736813 (E.D. Cal. Nov. 4, 2015) (no good cause found where petitioner submitted no evidence in support of ineffective assistance of counsel); *Lisea*,  2014 WL 4418632, at *3 (denying a motion for stay and abeyance because the petitioner presented no evidence in support of his contention that his appellate counsel was ineffective in failing to raise certain claims).

B.     Potentially Meritorious Claim

The second factor to be considered under *Rhines* is whether an unexhausted claim is "potentially meritorious."  A federal habeas petitioner need only show that one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under *Rhines*.  544 U.S. at 277; *see also Dixon*, 847 F.3d at 722.  In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." *Dixon*, 847 F.3d at 722 (quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005)).  "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted."  *Id.* (quoting *Cassett*, 406 F.3d at 624) (citing *Lundy*, 455 U.S. at 515).

---

[4]  Intellectual disability is no longer referred to as mental retardation.  (*See* Doc. No. 37-5 at 160 n.13.)

1    Here, petitioner argues that the noted evidence of petitioner's intellectual, mental, and

2 adaptive disabilities suggests a reasonable doubt as to his competency to stand trial, i.e., his

3 ability to understand his criminal proceedings and rationally consult with his trial counsel.

4 Respondent does not address the merits of petitioner's unexhausted claims, thereby at least

5 inferentially suggesting that those claims for habeas relief are appropriately addressed on their

6 merits following their exhaustion, if necessary.  (*See* Doc. Nos. 65 & 67.)

7    The court concludes that petitioner has adequately established that at least one of his

8 unexhausted claims is potentially meritorious for purposes of assessing whether he is entitled

9 to a stay under *Rhines*.  The court notes in this regard that the Ninth Circuit made clear in

10 *Dixon* that the federal court should not usurp the state court's right to first address the merits of

11 a "colorable federal claim." *Id.*

12    In this vein, petitioner's unexhausted claims 11.C.14 and 13 are at least "colorable" and

13 cannot be said to be "hopeless."  *See Cruz v. Mitchell*, No. 13-CV-02792-JST, 2015 WL

14 78779, at *3 (N.D. Cal. Jan. 5, 2015) (petitioner's unexhausted claims are potentially

15 meritorious where they are not "vague, conclusory, or patently frivolous."  These claims

16 appear to be "well-supported by specific averments and numerous exhibits" and by "relevant

17 legal authority" and "such evidence and offers of proof as are presently available to him." *Id.*

18 For example, petitioner alleges in his claim 11.C.14 that his trial counsel was ineffective at the

19 guilt phase of his trial by failing to investigate and present evidence that petitioner was

20 incompetent by virtue of intellectual disability and that he had been diagnosed with a

21 schizoaffective disorder and suffered hallucinations, possible brain injury and a cognitive

22 disorder.  (*See* Doc. No. 48-2 at 16; Doc. No. 37-5; Doc. No. 57 at 178-80.)  Petitioner alleges

23 in his claim 13 that during trial, appellate and post-conviction proceedings, by virtue of his

24 mental illnesses and impairments and intellectual deficits, he was incompetent and remains so.

25 Petitioner points to facts  suggesting a family and personal history of substance abuse, and that

26 he suffered hallucinations and perceptual disturbances before and after his arrest on capital

27 charges.  These allegations are specific and supported by citations to the state record and the

28 facts and evidence reflected therein.  *See Godinez v. Moran*, 509 U.S. 389, 396 (1993) ("[T]he

1  standard for competence to stand trial is whether a defendant has sufficient present ability to

2  consult with his lawyer with a reasonable degree of rational understanding and has a rational as

3  well as factual understanding of the proceedings against him.").

4        Petitioner's apparent level of functionality during his trial proceedings (*see* Doc. No. 48-

5  2 at 16, wherein attorney Mueller notes petitioner's apparent "verbal adeptness") is not alone sufficient

6  to show competency at this early stage of these habeas proceedings.  *See Pate v. Robinson*, 383

7  U.S. 375, 384-86 (1966) (courtroom demeanor and apparent lucidity alone are insufficient to

8  show competency to stand trial).  Nor is the seeming substantiality of the state habeas petition

9  alone a measure of  the objective reasonableness of attorney Karl's performance.  (*See* Doc.

10  No. 37-5; *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (post-conviction counsel does not

11  have a duty to raise every non-frivolous or weak issue).)

12        C.      Intentionally Dilatory Tactics

13        The final *Rhines* factor directs the court to consider whether petitioner has engaged in

14  "intentionally dilatory tactics."[5]

15        Petitioner supports his diligence by arguing that:  (i) he signed his request for

16  appointment of federal habeas counsel less than two weeks after the denial of his state habeas

17  petition; (ii) he filed his federal habeas petition within the time allowed under this court's

18  scheduling orders; (iii) any delay in the resolution of his state habeas claims, which were

19  denied six years after his state habeas petition was filed, is attributable to the California

20  Supreme Court; (iv) he reasonably awaited this court's identification of unexhausted claims

21  before seeking a return to state court to exhaust unexhausted claims; and (v) given his

22  "substantial impairments, any shortcoming of his prior counsel should not be attributed to

23  him."  (Doc. No. 66 at 6-8.)

24        Respondent does not argue otherwise and therefore appears to concede that petitioner

25  has not engaged in intentionally dilatory tactics.  (*See* Doc. Nos. 65 & 67.)

26        The court find nothing in the record suggesting that petitioner here has engaged in

27  "intentionally dilatory litigation tactics," either prior to or after the filing of his federal habeas

28  ────────────
[5]   The standard by which this determination is to be made has not been well developed in the case law.

10

petition.  It has been observed that "[i]t is reasonable to wait to return to state court until respondent has made his position [on] exhaustion known and th[e] court identifies which claims are exhausted and which are unexhausted."  *Leonard v. Davis*, No. 2:17-CV-0796-JAM-AC DP, 2019 WL 1772390, at *5 (E.D. Cal. Apr. 23, 2019), *report and recommendation adopted*, No. 2:17-CV-0796-JAM-AC DP, 2019 WL 2162980 (E.D. Cal. May 17, 2019).  Here, petitioner has been following this court's case management requirements in litigating this habeas action.  Finally, the court notes that it has previously found that petitioner had been pursuing his federal rights diligently when it twice granted him equitable tolling.  (Doc. No. 24 at 5; Doc. No. 47 at 12-13.)

CONCLUSION

For the reasons explained above, the court finds that:  (1) petitioner has established good cause for a stay of these proceedings based on his showing that post-conviction counsel in state court could have, but failed to, raise his unexhausted claims; (2) at least one of his unexhausted claims is potentially meritorious[6]; and (3) there is no indication before the court that petitioner has acted in an intentionally dilatory fashion.[7]  *See Rhines*, 544 U.S. at 278; *Mena*, 813 F.3d at 910.

/////

/////

/////

[6]  In light of this determination, the court need not determine whether a Rhines stay is appropriate as to each of petitioner's unexhausted claims.  "One claim requiring a stay acts as an umbrella for all claims."  Horning v. Martel, No. 2:10-CV-1932 JAM GGH DP, 2011 WL 5921662, at *3 (E.D. Cal. Nov. 28, 2011), findings and recommendations adopted, 2012 WL 163784 (Jan. 19, 2012); Jackson v. CSP-Solano, No. 2:14-CV-2268 MCE-DBP, 2017 WL 404583, at *5 (E.D. Cal. Jan. 30, 2017), report and recommendation adopted 2017 WL 896325 (E.D. Cal. Mar. 6, 2017) (same).

[7]  The *Rhines* analysis would also support the issuance of the requested stay pursuant to the court's inherent power to manage its dockets and stay proceedings.  *See Ryan v. Gonzales,* 568 U.S. 57, 73-74 (2013) (citing *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).  Particularly under on the facts and circumstances of this case, granting a stay pending exhaustion eliminates the possibility of piecemeal litigation, *see Calderon v. United States District Court (Taylor),* 134 F.3d 981, 987-88 (9th Cir. 1998), *abrogated on other grounds by Jackson*, 425 F.3d at 660-62, and promotes comity, *see Lundy,* 455 U.S. at 518.

11

Because petitioner has satisfied the requirements in order for a stay under *Rhines*, the instant proceeding should be stayed and held in abeyance pending exhaustion of his unexhausted claims in state court.[8]

Even so, a stay pending exhaustion of unexhausted claims may not be indefinite or without reasonable time limits for petitioner's return to state court. *Rhines*, 544 U.S. at 277–78. Although the duration of the stay of these federal habeas proceedings is dependent upon how long the exhaustion petition is pending before the state courts, it will conclude upon the rendering of a final decision in state court on petitioner's exhaustion petition filed in state court.

Accordingly:

1. Petitioner's request for the issuance of a stay is granted and these proceedings are held in abeyance while petitioner exhausts his unexhausted claims in state court

2. Petitioner is directed to pursue state court exhaustion without delay and to file in this court, within thirty (30) days after the filing date of the California Supreme Court's final order resolving petitioner's unexhausted claims, a motion to lift the stay in this action; and

3. The Clerk of the Court be directed to administratively close this case for the duration of the stay.

IT IS SO ORDERED.

Dated:   **July 2, 2020**

_____
UNITED STATES DISTRICT JUDGE

---

[8] Of course, the court expresses no opinion on the ultimate merits of petitioner's unexhausted claims.